# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Agatha Edwards, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1106 C.D. 2015 |
| | : | Submitted: December 18, 2015 |
| Workers' Compensation Appeal | : | |
| Board (Epicure Home Care, Inc. | : | |
| and State Workers' Insurance Fund), | : | |
| Respondents | : | |

BEFORE: HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**          **FILED: March 10, 2016**

Agatha Edwards (Claimant) asks whether the Workers' Compensation Appeal Board (Board) erred in reversing a Workers' Compensation Judge's (WCJ) decision finding Epicure Home Care, Inc. and the State Workers' Insurance Fund (collectively, Company) liable for her work-related injury under the Workers' Compensation Act (Act).[1] The central issue is whether Claimant, who performed personal caretaker services for Company, did so as an employee or an independent contractor. According to Claimant, the Board improperly reweighed the evidence, substituted its own fact finding for that of the WCJ, did not view the evidence in a light favorable to Claimant, and capriciously disregarded competent evidence in determining an employer-employee relationship did not exist. Discerning no error, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4; 2501-2708.

# I. Background

Claimant filed a claim petition against Company alleging she sustained an injury in February 2012, while working as a personal caretaker for a client of Company, Bernadette Dougherty (Client).[2] Company denied all material allegations, and it asserted Claimant was an independent contractor rather than an employee.

The petition was assigned to a WCJ. The WCJ bifurcated the case to decide the threshold issue of Claimant's employment status with Company. In support of her petition, Claimant testified. In opposition, Company presented the deposition testimony of its president, Brian Karabin (President). Based on the evidence presented, the WCJ made the following findings.

Company registers caretakers and matches caretakers to clients in need of in-home care. WCJ's Op., 5/21/13, Finding of Fact (F.F.) No. 3. Claimant worked for Company for six years, and for the duration, Company controlled and handed out the assignments. F.F. No. 3. Company set Claimant's hourly wages. Claimant usually earned $102 per day. Company controlled and dictated several elements of Claimant's work, including what she wore for assignments (scrubs). Company stayed in constant contact with Claimant, advising her of the client's condition, setting her hours, and requiring her to check in and out when working on an assignment. F.F. No. 3.

---

[2] Claimant also filed claim petitions against Client and the Uninsured Employer Guaranty Fund, which were dismissed.

Company assigned Claimant to work for Client in January 2012 as a personal caretaker. Claimant's comprehensive care of Client included feeding, bathing and attending to her general needs. Company set the guidelines for care and provided Claimant with a manual for patient care. F.F. No. 4. Claimant worked for Client until her injury a month later. Claimant testified she sustained an injury when she fell down a flight of stairs at Client's home. F.F. No. 3.

Claimant worked as a caretaker for over 19 years. In that time, she never worked independently, but was associated with an agency. Company trained Claimant on how to be a caretaker. Company billed clients; the clients sent separate checks to Company and Claimant. Claimant received payment directly from her clients, not Company. Claimant deducted her own taxes from the payments. In her tax returns, she identified herself as self-employed. F.F. No. 6.

Company did not inform Claimant it would not provide workers' compensation insurance for her. Prior to receiving the assignment from Company, Claimant had no contact with Client. Claimant never refused an assignment from Company, and she was unsure whether she had the right to refuse assignments. Company established her hours and place of work and it advised Claimant to keep client matters confidential. Claimant worked for Company for several months before signing employment agreements in 2009. F.F. No. 7.

Company maintains workers' compensation insurance only for President and two other employees who work in the office. Company requires caretakers to sign an agreement, which provides: caretakers are not employees of

3

Company; they are paid directly by the client; and, they are responsible for deducting their own taxes. Caretakers are free to work for other agencies. F.F. No. 9. Company sent Client a document asking her to provide workers' compensation to Claimant, but it was never signed or returned. F.F. No. 14.

Company established a suggested rate of pay, which it mailed to clients, and the caretaker's hours based on the client's needs. The caretaker and client could change the rate of pay. Company also mailed invoices to clients reflecting the amount owed to it and the caretaker. Company did not provide its caretakers with any sick time, vacation or holiday pay. F.F No. 10.

Company screened all caretakers by reviewing applications, qualifications and social security numbers, as well as checking references and performing background checks. F.F. No. 14. Company also provided guidelines for caretakers, which included instructions regarding what to wear (uniform), provision of services, maintenance of records on arrival and departure times, directions never to leave the patient without express permission, and when and how payment is provided. F.F. No. 11. Caretakers could not modify the guidelines. F.F. No. 14. If an aide did not follow the standards set by the client or Company, Company could remove him or her from the assignment. F.F. No. 15.

Following a recommendation from a state official, President mailed Claimant a document titled "Independent Contractor Agreement." F.F. No. 12. Claimant signed the agreement in 2011, though the date inserted by Claimant's signature corresponds to her date of hire, which was inaccurate. F.F. No. 12.

4

Company is currently licensed as a homecare registry, but it was previously licensed as an employment agency prior to Claimant's registration with Company. F.F. No. 13.

> Ultimately, the WCJ found:
>
> Claimant's hours, wages and the manner in which she performed her job were all set out, controlled and defined by [Company]. At the time of hire, Claimant was provided guidelines which provided instructions on what the employee was to wear, instructions on the personal services to be provided, instructions on maintaining records on arrival and departure times, instructions to never leave the patient without express permission, instructions on when and how wage payment is to be made and instructions to never use cell phones while at work. Claimant's wages are also set by [Company]. Once a client has retained [Company], a fee schedule containing both the fees to be paid to [Company] and the caregiver is mailed to the client. Billing and invoices are also controlled by [Company]. And Claimant also received instructions from [Company] on the confidentiality to be maintained regarding the identity of clients, the nature of care to be provided and what illness or maladies the client suffered from. [President] himself testified that the work ... Claimant performed was unskilled in nature. [President] also testified that [Company] was able to terminate ... Claimant or any other aide and replace them at any given time.

F.F. No. 18.

Based on these findings, the WCJ determined Claimant was an employee of Company. WCJ Op., Concl. of Law No. 1. By interlocutory order,

the WCJ ruled Claimant was an employee, not an independent contractor, for Company at the time of the alleged work injury. WCJ Op., at 4.

Thereafter, the WCJ conducted hearings relative to work injury. The WCJ concluded Claimant sustained a disabling work injury. By final order, the WCJ granted Claimant's claim petition. WCJ Op., 4/4/14, at 9; Reproduced Record (R.R.) at 22a.

Employer appealed to the Board, which reversed. The Board determined Claimant was an independent contractor, not an employee. In reaching this conclusion, the Board considered Fletcher v. Workers' Compensation Appeal Board (Saia d/b/a Visiting Angels) (Pa. Cmwlth., No. 1664 C.D. 2009, filed March 26, 2010 (unreported) 2010 WL 9513248),[3] in which this Court determined a home health caregiver was an independent contractor under similar circumstances. Claimant's appeal to this Court followed.[4]

---

[3] Section 414 of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.

[4] This Court's review is limited to whether there was a violation of constitutional rights or error of law, and whether necessary findings of fact were supported by substantial evidence. Am. Rd. Lines v. Workers' Comp. Appeal Bd. (Royal), 39 A.3d 603 (Pa. Cmwlth. 2013). A determination as to the existence of an employer/employee relationship is a question of law. Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer), 762 A.2d 328 (Pa. 2000). As to questions of law, our scope of review is plenary, and our standard of review is *de novo*. Tech One Assocs. v. Bd. of Property Assessment, Appeals & Review of Allegheny Cnty., 53 A.3d 685 (Pa. 2012).

On appeal, Claimant challenges the Board's decision on the grounds that the Board erred in reweighing the evidence and substituting its own fact finding for that of the WCJ. According to Claimant, the Board failed to read the record in the light most favorable to her as the party that succeeded before the WCJ. In addition, she contends the Board capriciously disregarded evidence that supported Claimant was an employee, not an independent contractor.

## II. Discussion

The WCJ, as the ultimate fact-finder in workers' compensation cases, "has exclusive province over questions of credibility and evidentiary weight …." A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. for Rehab), 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. Id. The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. Id. We are bound by the WCJ's credibility determinations. Id.

Moreover, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Id. at 1238 (quoting Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating Inc.), 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the

7

evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

A review for capricious disregard of material, competent evidence is an appropriate component of appellate review in any case in which the question is properly raised before a court. Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe), 812 A.2d 478 (Pa. 2002). A capricious disregard of evidence occurs where "the WCJ's findings reflect a deliberate disregard of competent evidence that logically could not have been avoided in reaching the decision ...." Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.), 923 A.2d 1197, 1205 (Pa. Cmwlth. 2007). Where substantial evidence supports the findings, and those findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard. Wintermyer.

Further, in a claim proceeding, the claimant bears the burden of proving all elements necessary for an award, including the existence of an employer-employee relationship. Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer), 762 A.2d 328 (Pa. 2000); Staron v. Workers' Comp. Appeal Bd. (Farrier), 121 A.3d 564 (Pa. Cmwlth. 2015). A claimant's employment status is a critical threshold determination for liability under the Act. Universal Am-Can. This is because independent contractors cannot recover benefits under the Act. Cox v. Caeti, 279 A.2d 756 (Pa. 1971).

"Although it is a claimant's burden to demonstrate an employer/employee relationship, our [Supreme] [C]ourt has decided that 'neither the compensation authorities nor the courts should be solicitous to find contractorship rather than employment, and that inferences favoring the claim need make only slightly stronger appeal to reason than those opposed.'" Universal Am-Can, 762 A.2d at 330 (quoting Diehl v. Keystone Alloys Co., 156 A.2d 818, 820 (Pa. 1959)). The existence of an employer-employee relationship is a question of law based on the facts presented in each case. Id.

"While no hard and fast rule exists to determine whether a particular relationship is that of employer-employee or owner-independent contractor, certain guidelines have been established and certain factors are required to be taken into consideration ...." Hammermill Paper Co. v. Rust Eng'g Co., 243 A.2d 389, 392 (Pa. 1968). Courts consider many factors including:

> (1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

Am. Rd. Lines v. Workers' Comp Appeal Bd. (Royal), 39 A.3d 603, 611 (Pa. Cmwlth. 2012); accord Hammermill.

Although no one factor is dispositive, control over the work to be completed and the manner in which it is to be performed are the primary factors in

9

determining employee status.  Universal Am-Can; Am. Rd. Lines.  Control exists where the alleged employer:  "possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee."  Am. Rd. Lines, 39 A.3d at 611 (citing 3D Trucking v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l), 921 A.2d 1281 (Pa. Cmwlth. 2007)).

Moreover, payment of wages and payroll deductions are significant factors, as is provision of workers' compensation coverage.  Id.; Martin Trucking Co. v. Workmen's Comp. Appeal Bd. (Andrushenko & Clark Searfoss), 373 A.2d 1168 (Pa. Cmwlth. 1977).  However, payment is not determinative.  Am. Rd. Lines; see Martin.  In addition, a tax filing denoting self-employment, while a relevant factor, is not dispositive on the issue.  See Guthrie v. Workers' Comp. Appeal Bd. (The Travelers' Club, Inc.), 854 A.2d 653 (Pa. Cmwlth. 2004).  Similarly, the existence of an employment or independent contractor agreement is another factor to consider, but it is not, by itself, dispositive.  Hammermill.

As the Board observed, the facts of this case are nearly identical to those in Fletcher.  There, the claimant worked as a home health aide for a customer of a senior home care referral agency.  The WCJ determined the agency was not the claimant's employer.  In reaching this determination, the WCJ found that the agency did not supervise the claimant's work activities and exercised no control whatsoever over the claimant's activities in the client's residence.  Rather, the client supervised and controlled the claimant's work activities.  Moreover, the client paid the claimant directly; no taxes were withheld.  The caregiver had the

10

option to negotiate the rate of pay with the clients. The WCJ further found that the claimant signed a caregiver agreement acknowledging her independent contractor status. On appeal, we upheld the denial of benefits upon concluding the WCJ did not err in determining no employment relationship existed. Id.

Here, the WCJ found factors indicative of an employer-employee relationship because Company provided guidelines, which included instructions on personal services provided and directed Claimant to wear scrubs, maintain records on arrival and departure times, not to leave client unattended, maintain confidentiality, and not to use cell phones. F.F. Nos. 11, 18. Company also established Claimant's hours and wages, and had the ability to terminate her employment. F.F. Nos. 3, 18.

Notwithstanding, the WCJ also made other findings supporting Claimant's status as an independent contractor. Although Company billed clients and set a suggested rate of pay, the clients paid Claimant directly and determined the rate of pay. F.F. Nos. 6 & 10. Claimant deducted her own taxes from the payments. F.F. No. 6. Claimant identified herself as self-employed on her tax returns. F.F. No. 6. Company did not provide its caretakers with any sick time, vacation or holiday pay. F.F No. 10. Claimant signed an employment agreement, which provides: (1) caretakers are not employees of Company; (2) caretakers are paid directly by the client; and, (3) caretakers are responsible for deducting their own taxes. F.F. No. 9. Claimant also signed a document titled "Independent Contractor Agreement." F.F. No. 12. Claimant was free to work for other agencies. F.F. No. 9.

11

As in Fletcher, Claimant's day-to-day tasks were controlled by Client, not Company. R.R. at 98a, 103a. Although Company provided Claimant with a general set of guidelines, it did not prescribe actual tasks to be completed or the manner in which work is to be performed. See F.F Nos. 11, 18. Claimant did not check in with Company on a daily basis. R.R. at 202a. She could take time off at her discretion. Company did not supply the uniform or other implements of work. R.R. at 202a, 217a. Although Company matched clients to caretakers, the clients possessed the ultimate power to maintain or discharge the caretakers, and set the final rate of pay.

Upon review, the Board did not reweigh the evidence, substitute its findings for that of the WCJ, or otherwise view the evidence in a light unfavorable to Claimant. Rather, the Board applied the law of Hammermill and Universal Am-Can to the WCJ's findings. It properly determined the WCJ's findings supported the legal conclusion that Claimant was an independent contractor, not an employee of Company.

Further, contrary to Claimant's assertions, the Board did not capriciously disregard the evidence. Acting as fact-finder with the power to weigh evidence and accept or reject the testimony of any witness in whole or in part, the WCJ made findings based on the testimony of Claimant and President regarding the nature of Claimant's employment status. See A & J Builders. Ultimately, those findings did not support the legal conclusion that Claimant was a Company employee.

Accordingly, we affirm.

$\overline{\hspace{3cm}}$
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Agatha Edwards,                                   :
                              Petitioner           :
                                                  :
                   v.                             :   No. 1106 C.D. 2015
                                                  :
Workers' Compensation Appeal                      :
Board (Epicure Home Care, Inc.                    :
and State Workers' Insurance Fund),               :
                            Respondents            :

# **O R D E R**

**AND NOW**, this 10th day of March, 2016, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Agatha Edwards,                          :
                                          : No. 1106 C.D. 2015
                    Petitioner            : Submitted:  December 18, 2015
                                          :
          v.                              :
                                          :
Workers' Compensation Appeal              :
Board (Epicure Home Care, Inc.            :
and State Workers' Insurance Fund),       :
                                          :
                    Respondents           :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


DISSENTING OPINION
BY SENIOR JUDGE FRIEDMAN                      FILED:  March 10, 2016


          Because the majority and the Board erred in usurping the WCJ's role as
factfinder and concluding that the facts are similar to this court's unreported opinion
in *Fletcher v. Workers' Compensation Appeal Board (Saia d/b/a Visiting Angels)* (Pa.
Cmwlth., No. 1664 C.D. 2009, filed March 26, 2010), I respectfully dissent.[1]


          Because Claimant prevailed before the WCJ, she "is entitled to all
favorable inferences that can be drawn from the evidence."  *State Workmen's
Insurance Fund v. Workmen's Compensation Appeal Board (Hoover)*, 680 A.2d 40,

---

[1] In addition to being factually dissimilar, *Fletcher*, an unreported opinion, is not controlling.

43 (Pa. Cmwlth. 1996). The majority concludes that "the facts of this case are nearly identical to those in *Fletcher*." (Maj. Op. at 10.) I cannot agree.

In *Fletcher*, this court found it "most important" that Nicole Saia, owner of a health care agency, testified that she did not have the right to exercise supervision or control over the claimant's activities at the client's residence and the claimant had no duty to report to Saia. *Fletcher*, slip op. at 12. Here, the WCJ specifically found that "the manner in which [Claimant] performed her job [was] set, controlled and defined by [Company]." (WCJ's Findings of Fact, No. 18.) Company trained Claimant to be a caregiver, provided Claimant with a manual for patient care, stayed in constant contact with Claimant, advising her of the client's condition, and set Claimant's hours. (*Id.*, Nos. 3-4, 18.) Company also required Claimant "to constantly check in and out when working on a case." (*Id.*, No. 3.)

Moreover, in *Fletcher*, the WCJ determined that Saia did not have the authority to terminate the relationship between a caregiver and a client. *Fletcher*, slip op. at 12. Here, the WCJ specifically found that Company could remove a caregiver from a case and replace the caregiver with someone else. (WCJ's Findings of Fact, No. 15.) Company could also terminate a caregiver at any time. (*Id.,* No. 18.)

Additionally, contrary to the majority's finding that the client determined Claimant's rate of pay (Maj. Op. at 11), the WCJ specifically found that Company set Claimant's hourly wage rate. (WCJ's Findings of Fact, Nos. 3, 18.) Unlike the claimant in *Fletcher*, Claimant here did not sign an employment agreement or an independent contractor agreement at the time Company hired her.

Specifically, Claimant had been working for Company for several months before signing an employment agreement in 2009, and did not sign an independent contractor agreement until 2011. (WCJ's Findings of Fact, Nos. 7, 12.)[2]

In determining whether an employer-employee relationship exists, a court may consider the following factors:

> (1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

*American Road Lines v. Workers' Compensation Appeal Board (Royal)*, 39 A.3d 603, 611 (Pa. Cmwlth. 2012). Control over the work to be completed and the manner in which it is to be performed are the primary factors to consider. *Id.* Control exists "where the alleged employer: possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee." *Id.*

As found by the WCJ, Company assigned Claimant to work at the client's home. (WCJ's Findings of Fact, Nos. 3-4.) Company could terminate

---

[2] The WCJ found that the purpose of the independent contractor agreement "was to attempt to avoid liability for any work injuries sustained by the aides who work for and are employed by [Company]." (WCJ's Findings of Fact, No. 19.)

Claimant at any time. (*Id.*, No. 18.) Company controlled Claimant's hours and wages and the manner in which she performed her work. (*Id.*)

Accordingly, based on the WCJ's findings of fact, I would conclude that Claimant is an employee of Company and reverse the decision of the Board.

_____
ROCHELLE S. FRIEDMAN, Senior Judge