# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Irma Smith,                                           :
            Petitioner        :
                                    :

        v.                                 :   No. 2710 C.D. 2015
                                      :   Submitted: June 10, 2016

Workers' Compensation Appeal              :
Board (HealthSouth of                             :
Mechanicsburg, Inc.),                              :
            Respondent      :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: August 5, 2016**

       Irma Smith (Claimant), representing herself, challenges an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision denying her claim and penalty petitions.[1] Claimant's uncounseled brief presents no clear cognizable issue. Because the record supports the WCJ's factual findings and the WCJ's decision comports with the law, we affirm.

       Claimant worked as a nurse for HealthSouth of Mechanicsburg, Inc. (Employer). In November 2012, she sustained an injury when she slipped and fell on a wet floor. Employer subsequently issued a medical-only notice of temporary

---

[1] Claimant offers no assertions regarding the denial of her penalty petition.

compensation payable (NTCP) acknowledging a "lumbar/knee" sprain. Certified Record, Notice of Temporary Compensation Payable, 12/20/13.

Thereafter, Claimant, through counsel, filed a claim petition alleging a low back injury. Claimant sought payment of total disability benefits, medical bills and counsel fees. Employer filed an answer denying the allegations and asserting various defenses. Claimant subsequently filed a penalty petition, alleging Employer did not accept or deny her claim. Employer denied the allegations. Hearings ensued before a WCJ.

Before the WCJ, Claimant testified that on November 9, 2012, she slipped and fell while working for Employer, landing on the right side of her lower back. She was placed on light duty work, which she continued to perform until she underwent surgery in March 2013. Claimant initially treated at Concentra, but she was eventually referred to Dr. Brett Himmelwright, D.O. (Claimant's Physician), who performed surgery in March 2013. "On direct examination, Claimant was somewhat vague as to how she came about being referred to [Claimant's Physician], testifying, 'When I saw him it was just as a referral for something else from another doctor.'" WCJ's Op., 6/26/14, Finding of Fact (F.F.) No. 6.

In August 2013, Claimant was released to her pre-injury position without restrictions. However, she was again removed from work in September 2013 because of ongoing back symptoms. Claimant acknowledged she experienced some back pain prior to the work injury, but she stated she was able to manage it. Claimant also confirmed she underwent physical therapy for her back before the work injury, but

2

she could not remember when she last did so. Claimant also received injections for her back before the work injury, but again she could not remember when she received the injections. Claimant testified she has "good days and bad days" and still experiences problems after surgery. F.F. No. 9.

When confronted with medical records on cross-examination, Claimant would not confirm or deny whether she treated for back pain intermittently since the 1990s. Claimant could not recall any treatment she received in the 1990s, nor did she recall subsequent treatment with various providers. She did not recall experiencing any low back pain in 2009, despite admittedly undergoing an MRI of the lumbar spine at that time and receiving physical therapy and epidural injections.

In addition, Claimant admitted she began treating with Dr. Michael Lupinacci in 2012. She could not recall the exact dates of treatment, but she admitted treating with him on several occasions. Claimant denied reporting to Dr. Lupinacci that she had a significant recurrence of her low back pain and that in 2012 her back pain was a "ten out of ten." F.F. No. 13. She also denied telling Dr. Lupinacci that she experienced worsening low back pain just six weeks before the work injury. Claimant confirmed she underwent an MRI of her lumbar spine in October 2012 and was subsequently referred to her Physician. However, "Claimant was vague regarding the nature of this consultation … stating that she did not believe it to be a surgical consultation, but rather just to see 'what other options were available.'" F.F. No. 14.

3

In support of her claim petition, Claimant presented the deposition testimony of her Physician, who is board-certified in orthopedic surgery. Claimant's Physician examined Claimant two weeks after her work injury. However, this appointment was scheduled *before* Claimant's work injury. When Claimant's Physician obtained a history from Claimant, she did not mention her work injury. However, she did explain she experienced back and leg pain for a period, with her symptoms progressively worsening. Claimant's Physician had no knowledge of Claimant's work injury when he recommended surgery. Claimant indicated she wished to proceed with surgery, but she wanted to delay it until she had additional time "banked at work." F.F. No. 17. Claimant returned to her Physician in January 2013 and indicated she wished to proceed with surgery. At that time, Claimant first mentioned the work injury.

In March 2013, Claimant's Physician performed surgery in the nature of a lumbar decompression and instrumented fusion at L4 through S1. He released Claimant to return to work without restrictions in August 2013. However, he imposed significant work restrictions in September 2013 because Claimant complained of a recurrence of back pain. Ultimately, Claimant's Physician opined Claimant sustained an acute exacerbation of degenerative disc disease of the lumbar spine as a result of her November 9, 2012 work injury. He further opined the fusion procedure he performed was related to the work injury because it was his understanding that Claimant was able to manage her symptoms and work without difficulty prior to the work injury. Claimant's Physician was not aware Claimant was referred to him for a surgical consultation in October 2012, less than a month *before* the work injury.

4

In opposition, Employer presented the deposition testimony of Christopher Wagener, M.D. (Employer's Physician), who is also board certified in orthopedic surgery. Employer's Physician performed an independent medical examination of Claimant in July 2013. He reviewed extensive medical records as well as an October 2012 MRI of Claimant's lumbar spine. From his review of the medical records, Employer's Physician opined it was clear Claimant had a longstanding history of low back pain. A 2009 MRI of Claimant's lumbar spine revealed degenerative joint disease of the facet joints, or spondylolisthesis, with L5 nerve root compromise. Employer's Physician opined this was a progressive condition that would result in the waxing and waning of symptoms over time. His review of Dr. Lupinacci's notes of treatment prior to the November 2012 work injury indicated Claimant had increased low back pain with radiating pain into her left leg. Dr. Lupinacci's notes also indicated Claimant's symptoms became difficult for her to manage.

Employer's Physician diagnosed Claimant with pre-existing degenerative disease, including spondylolisthesis at L4-5 and L5-S1. He did not believe Claimant materially aggravated her pre-existing condition as a result of the November 2012 work injury. He further opined the fusion surgery Claimant's Physician performed was not related to the work injury, and the work injury did not cause Claimant to undergo the procedure sooner than expected.

Employer presented its Physician's testimony a second time to address Claimant's Physician's testimony and the NTCP Employer issued. At that time, Employer's Physician opined that, based on the mechanism of injury, Claimant's

5

November 2012 work injury consisted of a lumbar strain. He further opined Claimant fully recovered from the work injury as of the date of his examination. Employer's Physician disagreed with Claimant's Physician's opinion that the fusion procedure was related to Claimant's work injury; rather, Employer's Physician opined it addressed Claimant's degenerative condition. In support, he noted Claimant had a 10 out of 10 pain rating before the work injury. He further noted x-rays taken before the work injury were identical to x-rays taken after the work injury. Employer's Physician also opined there was nothing in any diagnostic studies or physical examination findings to suggest Claimant suffered a material aggravation of her pre-existing condition as a result of the work injury.

Ultimately, the WCJ credited Claimant's testimony regarding her symptoms; however, he found Claimant's testimony was not determinative as to causation. On that issue, the WCJ credited the opinions of Employer's Physician over those of Claimant's Physician. Thus, the WCJ found Claimant's work injury did not include an aggravation of her pre-existing condition. Additionally, the WCJ found Claimant's work injury did not cause her to undergo the spinal fusion surgery. Rather, the WCJ determined Claimant's work injury was limited to a "lumbar strain" from which she fully recovered as of July 18, 2013, the date of Employer's Physician's examination. F.F. No. 53. Thus, in his order, the WCJ terminated benefits for the November 9, 2012 work injury as of July 18, 2013, and he denied Claimant's claim and penalty petitions. Claimant appealed to the Board.

6

On appeal, the Board affirmed. Claimant now petitions for review to this Court.[2]

From our review of Claimant's uncounseled brief, it is difficult to discern any developed, cognizable issue.[3]  See Pet'r's Br. at 5, 6.  It appears

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

[3] Claimant's brief has no Argument section.  In her Summary of Argument, she states:

> I feel that [Employer's Physician's] testimony was a major factor in the decision of this case. I feel that was not fair.  He did review my medical history but his opinions were just that his opinions.  He made it appear that my back was a lot worse than it really was before the work injury.  His [sic] did change some of his testimony after [Claimant's Physician] gave his testimony.  His medical examination took place four months after my surgery.  I feel that actions [sic] should speak for itself [sic].  How long I worked and performed my job without restrictions or missed any time off with my back condition [sic]. No one at [Employer's place of business] was aware I had a back problem until after I fell and told them about it. Sure I had some pain but I was always able manage it until I fell. [Claimant's Physician] was the first doctor to ever suggest back surgery to me in all the years I have had a back condition.  But isn't that what surgeons do suggest surgery[?] Everyone is different.  Doctors can make suggestions about what a patient should do[,] but the patient has to what is best for them.  I was not going to have something I did not want or need. Working as a nurse I have been around so many people who have had back surgery and it made the situation worse not better.  I was doing a good job of managing the pain I was having.  That was one of the reason [sic] I was not going to ever have surgery.  It was not until I fell and had problems was light duty causing my pain to become so severe that I even considered surgery.  All I am asking is you review all the facts not just [Employer's Physician's] testimony[.]

Pet'r's Br. at 5.  *After* her Summary of Argument, Claimant purports to set forth eight questions presented.  Id. at 6.  However, she offers no argument that corresponds to those issues.  Id. Additionally, the eight purported issues set forth no cognizable issue on appeal.  See, e.g., id. ("On page 2-It stated I was initially treated at Concentra then referred to [Claimant's Physician].  Why did I need to [sic] another doctor for just a simple lumbar sprain?"; "On page 3-It stated that I saw [Claimant's Physician] on November 21,2012 [sic] and I did not mention a work injury.  Why **(Footnote continued on next page…)**

Claimant's primary contention is that, in denying her claim petition, the WCJ erred in relying on the testimony of Employer's Physician. Id. at 5.

It is solely for the WCJ, as fact-finder, to assess credibility and resolve evidentiary conflicts. Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.), 134 A.3d 1156 (Pa. Cmwlth. 2016). Thus, the WCJ may reject the testimony of any witness, in whole or in part, including that of a medical witness. Id. Further, this Court views the evidence in a light most favorable to the party who prevailed before the WCJ. Id. Additionally, we draw all reasonable inferences deducible from the evidence in support of the WCJ's decision in favor of the prevailing party. Id. It does not matter if there is record evidence that supports findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings. Id.

Further, in a claim petition proceeding, the claimant bears the burden of proving all elements necessary to support a WCJ's award of compensation. Rite Aid Corp. v. Workers' Comp. Appeal Bd. (Bennett), 709 A.2d 447 (Pa. Cmwlth. 1998). Thus, where a claimant seeks ongoing benefits, she bears the burden of proving she suffered an injury while in the course of her employment and she remains disabled because of that injury. Scott v. Workers' Comp. Appeal Bd. (Ames True Temper, Inc.), 957 A.2d 800 (Pa. Cmwlth. 2008). "Where there is no obvious causal

---

**(continued…)**

would I need to mention it if I was already being treated by Dr. Warner at Concentra for it?"; "On page3-It stated I did not remember treatments I received in the 1990s. Why was I asked about treatments over five or more years and be expected to remember exact treatments,Dates,Times [sic]?").

8

connection between the injury and the alleged work-related cause," the claimant must establish the causal connection by unequivocal medical evidence in order to recover. Rocco v. Workers' Comp. Appeal Bd. (Parkside Realty Constr.), 725 A.2d 239, 243 (Pa. Cmwlth. 1999).

Here, in denying Claimant's claim petition, the WCJ credited the testimony of Employer's Physician over that of Claimant's Physician. In so doing, the WCJ made the following detailed findings (with emphasis added):

> 27. [Employer's Physician] performed an independent medical examination on July 18, 2013. In conjunction with his examination, [Employer's Physician] reviewed extensive medical records … that pre-dated the work injury, as well as many other records dating back to 2003. He also personally reviewed the lumbar spine MRI of October 8, 2012. [Employer's Physician] also secured a history from [Claimant] in conjunction with his examination, discussing with [Claimant] her work injury and subsequent medical treatment.
>
> 28. Based on his review of the prior medical records, [Employer's Physician] explained that it was clear [Claimant] had a longstanding history of low back pain. He noted [Claimant] underwent an MRI of the lumbar spine in 2009, which revealed degenerative joint disease of the facet joints, or spondylolisthesis, with L5 nerve root compromise. [Employer's Physician] was detailed in discussing the findings on this MRI, explaining that this MRI revealed [Claimant] had 'substantial arthritis at L4-5 and L5-S1 with spondylolisthesis, or a forward slippage of the vertebrae.' [Employer's Physician] explained that this is a progressive condition that will result in waxing and waning symptoms over time. Of note, [Employer's Physician] also discussed a pain diagram completed by [Claimant] in 2009. It was identical to the diagram completed by [Claimant] on July 18, 2013.

* * * *

36.    Based on the history he received from [Claimant], his review of medical records, and his findings on physical examination, [Employer's Physician] diagnosed Claimant with suffering from pre-existing degenerative disease, including spondylolisthesis at L4-5 and L5-S1.  He did not believe, however, that Claimant materially aggravated her pre-existing condition as a result of the November 9, 2012 work injury.

37.    To support this opinion, [Employer's Physician] noted Claimant was having the same symptoms both before and after the fall.  He also noted that the records of Dr. Lupinacci revealed Claimant was having a difficult time managing her symptoms, particularly at work.  In fact, due to [Claimant's] significant ongoing symptoms, which Claimant rated at times a ten out of ten, Claimant was referred for a surgical consultation with [Claimant's Physician] even prior to the work injury.

38.    [Employer's Physician] further referenced the October 8, 2012 MRI which pre-dated the work injury by approximately one month, and clearly identified advanced spondylolisthesis which, when taken in conjunction with Claimant's clear-cut and longstanding history of complaints, required surgery.  He explained that the fusion performed in March of 2013, was not related to the work injury, nor did the work injury cause Claimant to undergo this procedure sooner than expected.

39.    In this regard, [Employer's Physician] again reiterated that Claimant, based on her significant ongoing complaints and significant findings on the MRI, was discussing surgical options even prior to the work injury.  [Employer's Physician] did not believe this surgery, and subsequent period of disability, was in any way related to Claimant's work injury of November 9, 2012. All of [Employer's Physician's] opinions were rendered within a reasonable degree of medical certainty.

* * * *

41.    [Employer's Physician] explained that Claimant's  work injury of November 9, 2012, consisted of a lumbar strain.  He explained this was a complete and accurate diagnosis for Claimant's work injury, based on the mechanism of injury, as well as his review of the medical records and diagnostic studies.  He

10

testified that Claimant had fully recovered from the work injury as of the date of his examination. …

42. [Employer's Physician] reviewed the testimony of [Claimant's Physician] and disagreed with his opinion that the fusion procedure performed in March of 2013 was related to [Claimant's] work injury. [Employer's Physician] noted that the procedure was performed to address [Claimant's] longstanding degenerative condition, which was affecting her ability to work and manage her symptoms prior to the work injury, as clearly revealed by the medical records. In this regard, [Employer's Physician] pointed out that [Claimant] had 10 out of 10 pain prior to the work injury and specifically reported to Dr. Lupinacci just weeks before the work injury that she was having difficulty managing her symptoms.

43. [Employer's Physician] also noted that the x-rays taken before the work injury were identical to the x-rays taken after the work injury. There is simply nothing in any of the diagnostic studies or in the physical exam findings to suggest that Claimant had sustained a material aggravation of her pre-existing condition. [Employer's Physician] also pointed out that Claimant was referred to [Claimant's Physician] before the work injury for a surgical consultation for the ultimate surgery that she received.

44. The testimony of [Employer's Physician] is found more competent and credible than the testimony of [Claimant's Physician] for the following reasons.

45. [Claimant's Physician] had not reviewed any of Claimant's past medical records. He was admittedly unaware of the fact that Claimant, in the months preceding the work injury in 2012, had rated her back pain and leg pain as 10 out of 10. He was also not aware of the fact that Claimant reported to Dr. Lupinacci just weeks before the work injury that her 'symptoms have been difficult for her to manage.' It could not more clearly contradict the opinions of [Claimant's Physician], which were based on Claimant's 'ability to manage her symptoms.'

46. Additionally, [Claimant's Physician] was not even aware of the fact that Claimant had been referred to him for a surgical consultation one month prior to the work injury. It is unlikely that a person who was capable of managing her symptoms would be

11

referred to a surgeon to discuss the possibility of undergoing an invasive spinal fusion.

47. Claimant had a longstanding and clear cut history of back pain that radiated into her lower extremity. She had undergone conservative measures, including prescription medication, physical therapy, and a series of epidural injections, without relief. This was all clearly documented in the medical records, none of which were reviewed by [Claimant's Physician].

48. By October 10, 2012, Dr. Lupinacci had run out of conservative options to treat Claimant's progressing symptoms, which were becoming increasingly difficult to manage. As [Employer's Physician] explained, based on her symptoms at that time and the findings on the October 8, 2012 MRI, Claimant was a surgical candidate in October 2012. This opinion is supported by the fact that [Claimant's Physician] recommended surgery for Claimant prior to him even learning of Claimant's work injury.

49. As outlined above, the single most important factor in the instant litigation is the nature of Claimant's symptoms prior to the work injury. [Employer's Physician's] opinion are accepted as competent, credible and persuasive because he is the medical expert who demonstrated the strongest understanding as to [Claimant's] medical history, including her treatment and symptoms leading up to November 9, 2012. [Claimant's Physician] had not reviewed any of [Claimant's] past medical records, nor had he reviewed any of the diagnostic studies that pre-dated the work injury. Not having reviewed these records, [Claimant's Physician] lacked vitally important information that he, himself, acknowledged was crucial to his opinions.

50. The testimony of [Employer's Physician] makes clear that [Claimant's Physician] had a clear misunderstanding regarding … Claimant's ability to manage her symptoms and perform her work duties in the weeks and months leading up to her work injury. Indeed, [Employer's Physician] had reviewed all of the medical records in the instant matter. These records unequivocally state … Claimant was not able to manage her symptoms and reveal she was having difficulty performing her work duties. Lacking this information, [Claimant's Physician] simply cannot be found credible in the instant matter regarding a causal connection between Claimant's work injury and her subsequent treatment.

51.  [Employer's Physician], on the other hand, formed his opinions with a full and complete understanding of … Claimant's history.  He remained persuasive and unwavering throughout his testimony, detailing the nature of … Claimant's degenerative condition and progressing symptoms.  He was also detailed in describing the nature of … Claimant's work injury, outlining the reasons for his opinion that Claimant's work injury was limited to that of a 'lumbar strain,' from which she had fully recovered as of the date he examined her on July 18, 2013.   Of most importance, however, is [Employer's Physician's] persuasive testimony that … Claimant's work injury bears no causal relationship to … Claimant's fusion and ongoing disability.   As [Employer's Physician] had the information necessary to form an opinion within a reasonable degree of medical certainty, his testimony is found to be more competent and credible than the testimony of [Claimant's Physician].

F.F. Nos. 27-28, 36-39, 41-51.  As such, the WCJ determined:

Based upon the competent and credible evidence of record, it is found as a fact that Claimant's work injury did not include an aggravation of her pre-existing condition.  It is further found as a fact that Claimant's work injury was not a cause of her undergoing spinal fusion surgery. [Claimant's] work injury was limited to that of a 'lumbar strain', from which she fully recovered, consistent with the opinions of [Employer's Physician], as of July 18, 2013.

F.F. No. 53.

Employer's Physician's testimony amply supports the WCJ's critical findings.  See C.R., Deposition of Christopher F. Wagener, Notes of Testimony (N.T.), 11/25/13, at 14-35; Deposition of Christopher F. Wagener, N.T., 4/28/14, at 7-12.  In turn, these findings support the WCJ's determination that Claimant suffered *only* a lumbar sprain as a result of the November 9, 2012 work injury from which she fully recovered as of July 18, 2013, the date of Employer's Physician's examination.

13

Further, the WCJ rejected Claimant's Physician's opinions that Claimant suffered an acute exacerbation of the degenerative disc disease of the lumbar spine as a result of the work injury and that the fusion procedure was related to that work injury. The WCJ did so because Claimant's Physician lacked an accurate understanding of Claimant's medical history relating to her back. F.F. Nos. 45-47, 49-50. Based on the WCJ's decision to reject Claimant's Physician's opinion testimony as to causation, Claimant could not meet the burden of proof on her claim petition. Thus, no error is apparent in the WCJ's denial of Claimant's claim petition.

Accordingly, we affirm.[4]

ROBERT SIMPSON, Judge

---

[4] To the extent Claimant questions the WCJ's reasons for crediting the opinion testimony of Employer's Physician over that of Claimant's Physician, we note, to constitute a reasoned decision within the meaning of 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §834, a WCJ's decision must permit adequate appellate review. Dorsey v. Workers' Comp. Appeal Bd. (Crossing Const. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. Id. "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." Id. at 194-95 (citation omitted). There are countless objective factors that may support a WCJ's credibility determinations.

Here, the WCJ adequately articulated the basis for crediting the testimony of Employer's Physician over that of Claimant's Physician. More particularly, as set forth above, the WCJ's supported findings reveal Employer's Physician had a significantly more thorough and accurate understanding of Claimant's medical history than Claimant's Physician.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Irma Smith,                                    :
                            Petitioner          :
                                               :
          v.                                   :          No. 2710 C.D. 2015
                                               :
Workers' Compensation Appeal                    :
Board (HealthSouth of                           :
Mechanicsburg, Inc.),                          :
                            Respondent          :

## **O R D E R**

**AND NOW**, this 5th day of August, 2016, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.


_____
ROBERT SIMPSON, Judge