# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Shaw,                          :
                    Petitioner       :
                                     :
        v.                           :    No. 699 C.D. 2019
                                     :    Submitted: August 30, 2019
Workers' Compensation Appeal         :
Board (Ken-Crest Services),          :
                    Respondent       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge[1]
           HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                      FILED: December 13, 2019

Kevin Shaw (Claimant), *pro se*, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied Claimant's claim petition and granted the termination petition of Ken-Crest Services (Employer). In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant's hip and low back surgeries, which caused him to be unable to work, were unrelated to his work-related back and hip sprain. Discerning no merit to Claimant's assertion that the WCJ's findings are not supported by substantial evidence, we affirm.

Claimant worked for Employer as a heavy construction maintenance mechanic. On July 8, 2015, as part of a crew doing demolition work in a church basement, Claimant caught his foot in debris as he swung a sledgehammer, causing his body to spin. Claimant felt ripping in his left hip and shooting pain in his lower

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

back which radiated down into his right leg. On September 29, 2015, Employer issued a medical-only notice of compensation payable (NCP) that described the injury as left hip and low back "pain, sprain/strain." Certified Record (C.R.), Item 24.

On April 15, 2016, Claimant filed a claim petition seeking partial disability benefits from July 8, 2015, to November 13, 2015, and total disability benefits as of November 13, 2015, and ongoing. On October 24, 2016, Employer filed a petition to terminate benefits, asserting that Claimant had fully recovered from the work-related injury as of September 26, 2016. The petitions were consolidated for a hearing before the WCJ.

Claimant testified by deposition. He acknowledged that a month before the accident at work, he had an injection to his hip and that he had a history of back problems that included surgery in 1990. Claimant was first treated for his work injury on September 3, 2015, and given light-duty work restrictions. In November of 2015, Claimant underwent a left hip replacement, and he had a low back surgery in April 2016. Claimant last worked on November 13, 2015. He continues to experience pain in his back and hip and does not believe that he can return to his original job.

Claimant presented the deposition testimony of Joseph Hoban, his supervisor, who testified that Claimant informed him on the day of the incident that he had slipped and fallen. Claimant continued to work that day and did not require medical treatment. Hoban filled out an injury report on September 4, 2015, after he learned that Claimant was seeking medical treatment for a work injury. Hoban testified that Claimant returned to work after the incident on July 8, 2015, and continued to work until he left for hip surgery in November 2015. Hoban stated that

2

Employer made "limitations and accommodations" for Claimant after he started seeing "the Workmen's Comp doctor." Notes of Testimony (N.T.), 3/28/2017, at 17.

Claimant also presented the deposition testimony of William Burch, M.D., a board-certified orthopedic surgeon, who began treating Claimant on October 12, 2015. Dr. Burch took a work and medical history of Claimant and did a physical examination, which revealed marked diffuse tenderness in the low back. Claimant's left hip was "globally painful," with a decrease in range of motion. N.T., 6/20/2017, at 14. Dr. Burch also reviewed a report of a magnetic resonance imaging (MRI) study of Claimant's lumbar spine dated September 9, 2015, which showed a significant amount of degenerative disease with foraminal stenosis and lateral recess stenosis. There was significant osteoarthritis of the joint in Claimant's left hip. Dr. Burch stated that the degenerative changes took place "over many years" and were aggravated by the "torsion-type trauma" on July 8, 2015. N.T., 6/20/2017, at 26, 32. Dr. Burch opined that Claimant sustained persistent lumbosacral strain, left hip strain, and sciatica secondary to a right-sided lumbar radiculopathy that were caused by the July 8, 2015, work injury.

In opposition to the claim petition and in support of its termination petition, Employer presented the deposition testimony of Stuart Gordon, M.D., a board-certified orthopedic surgeon and hip specialist, who did an independent medical examination of Claimant on July 21, 2016. Dr. Gordon took a history of Claimant's July 8, 2015, work injury; reviewed his medical records; and did a physical examination. Claimant's medical records of September 2015 contained a diagnosis of hip strain and a history of hip arthritis and osteoarthritis. A 2003 x-ray of his hip recorded a history of left hip pain and a finding of osteoarthritis with cystic

3

change and medial joint space narrowing. The MRI of September 9, 2015, did not show a "post traumatic type arthritis or result" but, rather, osteoarthritis that is consistent with a progression from the findings shown in the 2003 x-ray. N.T., 2/16/2017, at 14.

Dr. Gordon discussed medical notes from the Rothman Institute, which documented Claimant's left hip injection on June 9, 2015, and his follow-up visit on July 14, 2015, six days after the work accident. The July 14, 2015, visit revealed that the injection had provided relief but Claimant "overdid it at work," and the left hip pain was back to "baseline." N.T., 2/16/2017, at 13. Another medical note dated September 3, 2015, stated that Claimant "re-aggravated the left [hip] recently playing roller hockey." C.R., Item 30, Exhibit 3.

Dr. Gordon opined that Claimant sustained a left hip strain and sprain as a result of the work incident on July 8, 2015, from which he had fully recovered. The hip replacement in November 2015 was necessitated by Claimant's pre-existing osteoarthritis and not the work injury. Dr. Gordon explained that the work injury aggravated "[n]ot the arthritic process, but the soft tissues around the hip joint." N.T., 2/16/2017, at 25. Employer placed into evidence Claimant's medical records including the operative report of the hip replacement, the 2003 x-ray, and the MRI of September 2015, but not the July 14, 2015, Rothman Institute notes.

Employer also presented the deposition testimony of Marc Manzione, M.D., a board-certified orthopedic surgeon, who did an independent medical examination of Claimant's lower back on September 26, 2016. Dr. Manzione reviewed Claimant's medical records, which documented low back problems in the 1990s. A MRI report of Claimant's lumbar spine, dated October 29, 2003, noted prior surgery at L5 and multiple level degenerative disc disease, posterior column

4

degeneration changes, and a right-sided broad disc protrusion at L5-S1. The MRI study from September 2015 showed mild scoliosis and degenerative disc disease at all levels between T12 and S1. The degenerative disc disease was particularly advanced at L3-L4 and L4-L5 with resulting central stenosis. There were multiple level posterior column degenerative changes resulting in lateral recess and foraminal stenosis, which was severe on the right at L4-L5 and L5-S1. There were spondylotic disc osteophyte complexes at all levels between L2 and S1. Dr. Manzione stated that these findings were consistent with Claimant's history of degenerative disc disease.

Dr. Manzione testified that the MRI of September 2015 did not indicate "post traumatic abnormalities" attributable to the work injury. N.T., 3/6/2017, at 19. A medical note dated September 10, 2015, reported full range of motion, no tenderness, and negative straight leg raising test with no neurologic abnormalities noted. Dr. Manzione opined that Claimant sustained a work-related low back strain and sprain, from which he had fully recovered. Claimant's low back surgery of April 2016 was necessitated by Claimant's pre-existing degenerative changes, not the work injury. Employer introduced into evidence Claimant's MRI reports of 2003 and 2015 and the surgery report of April 2016.

The WCJ credited Claimant's testimony that he sustained injuries to his low back and left hip on July 8, 2015. She also found the testimony of Hoban credible that Claimant continued to work for Employer with light-duty restrictions until he left work for his hip replacement in November 2015.

The WCJ credited Drs. Gordon and Manzione's testimony over Dr. Burch's, finding that Claimant's July 8, 2015, work injury consisted of a low back and left hip strain and sprain. In so doing, the WCJ noted that Dr. Gordon is an

5

active surgeon, whereas Dr. Burch has not done surgery since 1990. Dr. Gordon and Dr. Manzione reviewed the MRI studies, whereas Dr. Burch read only the report. Dr. Gordon's testimony was further supported by Claimant's medical records, which documented longstanding left hip pain and osteoarthritis. Notably, during the July 14, 2015, visit at the Rothman Institute, Claimant reported relief after the hip injection but "a return to baseline after overdoing it at work." WCJ Decision at 11; Findings of Fact No. 10-d. The WCJ found the September 3, 2015, Rothman Institute note "of particular significance," because it indicated an aggravation of Claimant's left hip pain from playing roller hockey. WCJ Decision at 12; Findings of Fact No. 10-e. The WCJ found that Dr. Manzione's testimony was supported by Claimant's medical records documenting longstanding degenerative disc disease. Further, the MRI of September 2015 did not show a work-related trauma in Claimant's low back.

Having found that Claimant fully recovered from the work-related strain and sprain, the WCJ denied Claimant's claim petition for disability benefits and granted Employer's termination petition. Claimant appealed to the Board and argued that the WCJ's findings were based on "objectionable hearsay." C.R., Item 11 at 2. The Board affirmed the WCJ and held that the WCJ's findings were supported by the credible testimony of Dr. Gordon, Dr. Manzione, and Hoban, which constituted substantial competent evidence. Claimant did not produce evidence that his work injuries caused a loss of earning power. Hoban's testimony established that Claimant continued to work until he left work for the non-work-related hip surgery in November 2015. The Board further rejected Claimant's argument that the WCJ relied on hearsay, noting that Drs. Gordon and Manzione's testimony was

6

corroborated by Claimant's diagnostic studies and medical records. Claimant petitioned for this Court's review.[2]

On appeal, Claimant raises two issues for our review. He first argues that the Board erred in affirming the WCJ's decision denying his claim petition for disability benefits. Second, he argues that the Board erred in affirming the WCJ's decision granting Employer's termination petition.

In his first issue, Claimant argues that he experienced a wage loss because, after the work accident, he was placed under light-duty restrictions and "worked for months not carrying his pre[-]injury wage." Claimant Brief at 10. Thus, the WCJ erred in denying him disability compensation. Employer counters that the record did not show that Claimant's work injury caused a wage loss; to the contrary, Claimant continued to work for Employer until November 2015, when he left for his hip replacement surgery that was unrelated to his work injury.

Under the Workers' Compensation Act (Act),[3] "disability" is a term synonymous with a "loss of earning power." *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.)*, 545 A.2d 465, 466 (Pa. Cmwlth. 1988). Claimant bears the burden of proving a disability as a result of his work injury. *School District of Philadelphia v. Workers' Compensation Appeal Board (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). That a claimant suffered a work-related injury does not automatically establish a disability because injury and disability are two legally distinct terms. *Id*. In a case where a pre-existing condition is a factor,

---

[2] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

the claimant must establish that "the disability resulted from the new injury, and not from the normal progress of the pre-existing physical defect." *Halaski v. Hilton Hotel*, 409 A.2d 367, 369 (Pa. 1979).

As the ultimate fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). A court may overturn a credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational. *Id*.

Claimant testified that he continued to work for Employer with light-duty restrictions from September 3, 2015, until November 13, 2015, when he left work to undergo a hip replacement. Claimant's testimony was consistent with Hoban's, who testified that "limitations and accommodations" were made for Claimant after he started seeing a "Workmen's Comp doctor." N.T., 3/28/2017, at 17. However, Claimant offered no evidence that the light-duty restrictions resulted in a reduction in either his work hours or earnings. Further, the WCJ found the testimony of Dr. Gordon credible that the hip replacement in November of 2015 was not related to the work injury but, rather, Claimant's osteoarthritis, which has been progressing since 2003. Claimant bears the burden to prove each element of his claim entitling him to compensation under the Act, including that his work injury resulted in disability. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994). Because Claimant did not satisfy his burden, the Board did not err in affirming the WCJ's decision denying Claimant's claim for disability benefits.

8

Claimant argues, next, that the WCJ erred in granting Employer's termination petition because Claimant has not recovered from the "left hip and low back pain" that Employer accepted as a work injury in the NCP. Claimant Brief at 13. Claimant further contends that the WCJ abused her discretion by crediting the testimony of Drs. Gordon and Manzione, because that testimony was not consistent with the record and based on hearsay. Employer counters that the WCJ adequately explained her reasons for accepting Drs. Gordon and Manzione's testimony, which was corroborated by competent medical evidence.

An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased or that any current disability arises from a cause unrelated to the employee's work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998) (holding that termination was improper where employer's expert did not rebut the claimant's credible complaints of ongoing pain and fatigue). In a case where the claimant complains of ongoing pain, termination of benefits is proper where the WCJ credits the unequivocal testimony of the employer's medical expert that, within a reasonable degree of medical certainty, "the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Here, Employer's NCP described the work injury as left hip and low back "pain, sprain/strain." C.R., Item 24. Dr. Gordon and Dr. Manzione both opined that Claimant's current disability from the surgery is not related to the work injury but, rather, to the progression of longstanding degenerative conditions. Specifically,

9

Dr. Gordon opined that the work-related sprain and strain aggravated "[n]ot the arthritic process, but the soft tissues around the hip joint." N.T., 2/16/2017, at 25. Likewise, Dr. Manzione testified that the MRI films did not show "post traumatic abnormalities" in Claimant's low back attributable to the work injury. N.T., 3/6/2017, at 19. The testimony of Drs. Gordon and Manzione was supported by Claimant's medical records, which contained a long history of degenerative diseases and pain symptoms. The WCJ did not err in granting Employer's termination petition.

Nevertheless, Claimant challenges the WCJ's decision to credit the testimony of Drs. Gordon and Manzione as arbitrary. Specifically, Claimant argues that Dr. Gordon, in testifying that Claimant recovered from the hip injury, relied on the July 14, 2015, "hearsay note from the Rothman [Institute,]" which indicated that the hip injection provided relief but Claimant "overdid it at work," and his left hip pain was back to baseline. Claimant Brief at 12-13. This argument is unpersuasive. A review of Dr. Gordon's deposition shows that Claimant did not object to his testimony about the July 14, 2015, medical note. Hearsay medical evidence "to which there is no objection must be corroborated by other competent medical evidence, and not simply by the testimony of the claimant or another untrained lay witness." *Calcara v. Workers' Compensation Appeal Board (St. Joseph Hospital)*, 706 A.2d 1286, 1288 (Pa. Cmwlth. 1998).[4] Dr. Gordon's testimony regarding

---

[4] This is an application of the so-called *Walker* rule on the use of hearsay evidence, which states:

> (1) Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding.... (2) Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding ... [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand.

Claimant's pre-existing degenerative disease and pain symptoms was corroborated by Claimant's diagnostic studies and medical records, including the hip x-ray from 2003, the MRI study in September 2015, and the post-operative report on Claimant's hip replacement in November 2015, all of which were introduced into evidence. As such, the WCJ did not err by crediting Dr. Gordon's testimony.

Claimant argues that Dr. Manzione's testimony that Claimant's current disability is related to his pre-existing degenerative changes, not the work injury, is inconsistent with the record. He asserts that the record does not show that he had back pain or disability prior to the work injury. We disagree. Claimant's medical records, including the MRI reports of Claimant's lumbar spine from 2003 and 2015, document longstanding degenerative disc disease. When both parties present evidence, it does not matter that there is evidence in the record that supports a factual finding contrary to that made by the WCJ; rather, the critical inquiry is whether there is evidence to support the findings actually made. *Edwards v. Workers' Compensation Appeal Board (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 (Pa. Cmwlth. 2016). The WCJ's finding that Claimant has recovered from work-related low back strain and sprain cannot be disturbed.

In sum, Claimant failed to establish that his work injury resulted in disability or a loss of earning power. Furthermore, Employer presented substantial evidence that Claimant has fully recovered from the accepted injuries in the NCP; Claimant's continued pain is not connected to the work injury but, rather, his longstanding degenerative diseases. For these reasons, we hold that the Board did not err in affirming the WCJ's decision denying Claimant's claim petition for

---

*Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). The *Walker* rule has been adopted in other areas of administrative law, including workers' compensation. *Calcara*, 706 A.2d at 1288.

disability benefits and granting Employer's termination petition. The Board's order dated May 3, 2019, is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Shaw,                                       :
                              Petitioner          :
                                                  :
                    v.                            :   No. 699 C.D. 2019
                                                  :
Workers' Compensation Appeal                      :
Board (Ken-Crest Services),                       :
                              Respondent          :

# **O R D E R**

AND NOW, this 13th day of December, 2019, the Workers' Compensation Appeal Board's May 3, 2019, order, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge