# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fakhriddin Baykhanov,      :
          Petitioner     :
                      :
         v.           :   No. 245 C.D. 2018
                      :   Submitted: June 29, 2018
Workers' Compensation Appeal   :
Board (Onixe Express),        :
          Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER[1]**          **FILED: October 12, 2018**

Fakhriddin Baykhanov (Claimant) petitions for review of a February 2, 2018 Order of the Workers' Compensation (WC) Appeal Board (Board), affirming a decision by a WC Judge (WCJ) that Claimant was an independent contractor, not an employee, and thus was ineligible for WC benefits. After review, finding no error, we affirm.

## I.   Background

On May 6, 2015, Claimant injured his right wrist and knee after tripping and falling while unloading an automobile from a car carrier. The car carrier was owned

---

[1] This case was reassigned to the author on August 9, 2018.

by Onixe Express (Defendant). Claimant operated the car carrier pursuant to an agreement he signed with Defendant.

Following his injury, Claimant filed a claim petition alleging he suffered a work-related injury while in the course and scope of his employment with Defendant. Defendant denied an employment relationship with Claimant. At a hearing before the WCJ, it was learned Defendant did not carry WC insurance. Consequently, Claimant filed a claim petition against the Uninsured Employer Guaranty Fund (UEGF).

A series of hearings was held, at which Claimant presented a deposition of his physician, detailing his injuries. Claimant also testified as to his relationship with Defendant as follows. Claimant drove a two-layer car carrier truck to various locations across the United States at which he would pick up new, old, or damaged vehicles, load them onto the car carrier, and then deliver them to a designated drop-off location. A dispatcher advised Claimant where to pick up and drop off loads. Defendant owned and insured the car carrier. Defendant also provided Claimant with a GPS and reimbursed him for gas and tolls. No one supervised his work or trained him. Defendant did not tell Claimant what routes to take when transporting cars. He was simply given a work order with an address on it. He determined how many hours to drive each day. Claimant obtained his commercial driver's license (CDL) in 2003 and held similar jobs in the past for other companies. Claimant previously owned his own transport company but has since sold his truck. Prior to starting work, Claimant executed an independent contractor agreement with Defendant. Claimant reads "a little bit" of English but claims he did not read the agreement before initialing each paragraph or signing the bottom of the document. Although his wife speaks English and read a fee agreement with his attorney to him,

2

Claimant did not ask his wife to read the independent contractor agreement to him prior to executing it. Claimant never told Defendant that he did not understand the agreement. Claimant was compensated by the trip, receiving 25 percent of the gross amount that Defendant received for each trip. Claimant admits taxes were not withheld from his pay, which is consistent with the terms of the independent contractor agreement. Claimant received a Form 1099. Claimant testified he did not believe he could turn down work. If he did, Defendant would find another driver. Once he did take off work for a medical condition. After signing the independent contractor agreement, he worked briefly for another trucking company while he waited for Defendant to have a truck available for him.

In opposition, Defendant presented the deposition of its owner (Owner), who testified as follows. Defendant is a car holder business that owned and insured the car carrier Claimant drove but has no employees. Claimant worked for Defendant as an independent contractor, whose duty was to transport cars. Claimant chose the routes taken, had no set schedule, was free to work for other companies, and could turn down assignments. He and Claimant communicated with one another in Russian.

Defendant also presented the deposition testimony of Defendant's secretary (Secretary), who testified as follows. Secretary is Owner's wife and assists with office work including contracts and human resources. She confirmed Defendant has no employees and that Claimant worked for Defendant as an independent contractor. Secretary met with Claimant and provided him a copy of the independent contractor agreement, which he signed. Claimant never indicated to her that he did not understand it. She believed Claimant read some English because that is a requirement of the Department of Transportation. Defendant contracts with another

3

company to handle dispatching. Claimant was free to turn down assignments and did when he had a doctor's appointment. Drivers were given a timeframe when to pick up and drop off cars. Within that timeframe, Claimant was free to do whatever he wanted. Cars that were picked up and delivered for auction were not time sensitive because the auctions occur around the clock. Claimant did not have a set number of hours he was required to work. Drivers were not told when to start or stop driving each day. The only requirement was to possess a CDL and pass a drug test, which are requirements of the Department of Transportation. Claimant determined which routes to take. Defendant paid Claimant 25 percent of the gross it received for each load. Defendant paid Claimant by check, withheld no deductions, and issued a Form 1099. Some drivers for Defendant owned their own trucks. Secretary was aware that Claimant used to own his own truck and trucking company. According to Secretary, Claimant could drive for other companies if he so desired.

Based upon the above, the WCJ accepted the testimony of Claimant's physician as to the injuries Claimant suffered and that he was not fully recovered from them. However, the WCJ denied the claim petitions on the basis that Claimant was an independent contractor not an employee of Defendant. In making this determination, the WCJ "generally accept[ed]" Claimant's testimony, except where it was inconsistent with Owner's and Secretary's testimony. (WCJ Decision, Finding of Fact (FOF) ¶ 12.) The WCJ specifically rejected Claimant's testimony in favor of Owner's and Secretary's testimony, "particularly as to the issue of whether Claimant was an employee or an independent contractor." (*Id.*) The WCJ accepted Owner's and Secretary's testimony on the issue of employment, finding there was "really no dispute as to the following facts":

4

a. [Owner] contracted with Claimant for work as an independent contractor and Claimant signed [the] independent contractor agreement.

b. There was no guarantee of work by Defendant, and Claimant could refuse work. In fact, Claimant did refuse work when he had a doctor's appointment.

c. Claimant was paid by the job. No deductions were taken from payments made to Claimant. In fact, Claimant specifically testified that he was paid by check and given a "1099."

d. There were no restrictions imposed on Claimant in providing similar services to others. In fact, Claimant did drive a truck for another company at one time during the time he had entered into the independent contractor agreement with Defendant.

e. [Owner] did not provide direction and control over the work performed by Claimant. Rather, Claimant was simply given a pick up and drop off point and a "time frame" when to pick up and deliver the cars. Claimant could choose the routes he travelled to perform his services and what times he wanted to drive. In fact, Claimant testified, "the driver is in charge of" what time to start and stop driving . . . . No one supervised Claimant's work and/or trained him how to do the job. He testified he had done this work before, including owning his own trucking business, UZ Trucking.

f. Finally, and perhaps most notably, Claimant signed an independent contractor agreement with Defendant for services provided. Claimant acknowledged he received a "1099" and filed taxes. Claimant never presented his tax returns to show that he reported the income as anything other than 1099 contractor income. Also, it was clear to this [WCJ] that Claimant was not an inexperienced truck driver who had no idea what he was signing. Claimant and the owner of Defendant communicated in Russian with each other. Claimant has had a CDL license since 2003. He worked for other trucking companies . . . . He then had his own truck, and he was an "owner/operator" from 2009 to 2013.[FN]1 Claimant's trucking company was called UZ Trucking. It appears to this [WCJ] that Claimant did understand he was working as an independent contractor. Claimant possessed a skill of being able to drive a

commercial truck and knew how to load and unload cars to transport them with a specialized two-layer car carrier truck.

> [FN]¹ This [WCJ] found this to be an important factor. This is a close case, as there are legitimate arguments that Defendant supplied the tools (i.e., the truck and GPS) and Claimant's work is clearly part of the regular business of Defendant's transportation business. However, the most important element in Pennsylvania is the right to control, and the [WCJ] does not believe that element weighs in favor of Claimant in this case. If Claimant was someone who had just received his CDL license and had received training from Defendant on how to perform the job, this [WCJ] may well have found an employment relationship.

(*Id.* ¶ 13 (internal citations omitted).)

Based upon these findings, the WCJ concluded Claimant was an independent contractor, not an employee, of Defendant, and dismissed the claim petitions.

Claimant appealed to the Board, which affirmed. Citing the WCJ's findings that Defendant did not control Claimant's work or the manner in which he performed it, Claimant determined his work hours, and Claimant could refuse assignments from Defendant and accept work from other companies, the Board concluded the WCJ properly determined Claimant failed to meet his burden of establishing an employment relationship.

Claimant now seeks review by this Court.² Claimant argues the WCJ erred in finding Claimant was an independent contractor. He claims the evidence weighs in favor of finding control by Defendant not against it. He acknowledges that he owned his own transport business but he sold his truck. Further, this prior experience should not make him an independent contractor. Claimant argues he did not control his

---

² Our review is limited to whether constitutional rights were violated, errors of law were committed, or necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000).

6

work, as he could not work elsewhere since he had no truck to use. He points out that Defendant provided the vehicle, insurance, gas, tools, and GPS. As for the independent contractor agreement he signed, he argues he does not read English and therefore did not understand its implications. He also did not believe he had the right to refuse assignments. Claimant also argues that since the WCJ found this to be a "close case," the WC Act[3] should be interpreted in his favor because it is remedial in nature.

Defendant counters that aside from the truck and GPS, it exercised no control over Claimant. According to Defendant, Claimant was simply told where to pick up and drop off loads, but was not told how to accomplish this. It points out that Claimant was paid by the job and no deductions were made. It also argues that Claimant knowingly executed the independent contractor agreement. Finally, Defendant argues the WC Act is construed in favor of the claimant-employee only if there is an ambiguity, which does not exist here.

Intervenor UEGF echoes Defendant's arguments and adds that there is substantial evidence to support the WCJ's findings. Further, since there is no borderline interpretation, there is no need to construe the WC Act in Claimant's favor.

## II.    Discussion

In order to prevail on a claim petition, a claimant must establish all of the necessary elements, including the existence of an employment relationship.

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

*Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1162 (Pa. Cmwlth. 2016). Because independent contractors cannot recover benefits under the WC Act, the existence of an employment relationship is a threshold matter. *Am. Road Lines v. Workers' Comp. Appeal Bd. (Royal)*, 39 A.3d 603, 610 (Pa. Cmwlth. 2012). The existence of an employment relationship is a question of law to be determined based upon the unique facts presented in each case. *Id.*

The Pennsylvania Supreme Court has recognized that there is "no hard and fast rule" as to when an employment relationship exists, but has set forth a number of factors to be considered. *Hammermill Paper Co. v. Rust Eng'g Co.*, 243 A.2d 389, 392 (Pa. 1968). These factors include: (1) control of the manner in which work is to be done; (2) "responsibility for result only"; (3) "terms of agreement between the parties"; (4) "the nature of the work or occupation"; (5) "skill required for performance"; (6) "whether one employed is engaged in a distinct occupation or business"; (7) "which party supplies the tools"; (8) "whether payment is by the time or by the job"; (9) whether work is part of the regular business of the alleged employer; and (10) whether the alleged employer has the right to terminate the employment at any time. *Id.* "[N]o one factor is dispositive." *Edwards*, 134 A.3d at 1162. However, "there are certain guidelines that have been elevated to be dominant considerations." *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 333 (Pa. 2000). A key factor is the right to control the work to be done and the manner in which it is performed. *Id.*

With the above principles in mind, we turn to the facts of this case. Claimant argues the WCJ erred in finding Defendant did not exercise control over Claimant's work or the manner in which he performed it. In reaching his decision, the WCJ concluded the following "are suggestive of an independent contractor relationship":

8

a. Defendant did not train Claimant; indeed, by Claimant's own testimony, he previously had his own transporting business, and was therefore already familiar with the services provided to Defendant.

b. No one supervised Claimant while he was doing his work. Claimant was not told what to do when it comes to the loading and unloading of cars. Defendant did not set the routes to be taken in transporting the vehicles; rather, Claimant chose his own routes. Defendant's only role was in providing the truck, and informing Claimant of the locations for pick-up and drop-off.

c. The agreement between Claimant and Defendant is probative of an independent contractor relationship. Claimant now suggests that he did not understand English, but Claimant did not request assistance in translating the agreement at the time it was signed and communicated with the owner of Defendant in Russian.

d. Rather than being paid by time, Claimant agreed to a payment of a percentage of the gross trip paid to [Defendant]. This amount would be paid no matter how much time Claimant spent performing his services.

e. No taxes were withheld from Claimant's pay. He received 1099s at the end of each year and he filed taxes.

f. Claimant possessed a skill of being able to drive a commercial truck and knew how to load and unload cars to transport them with knowledge of how to operate and load, secure, and unload cars on a specialized two-layer car carrier truck.

(WCJ Decision, Conclusion of Law (COL) ¶ 5.)

Claimant does not appear to challenge these findings based on a lack of substantial evidence. Instead, Claimant argues that, as a matter of law, these factors weigh in his favor. We disagree. The WCJ did not view any one factor as dispositive. Rather, the WCJ weighed all of the *Hammermill* factors, and concluded

9

that Claimant failed to sustain his burden of proving he was an employee of Defendant.

It is important to bear in mind that the WCJ rejected Claimant's testimony to the extent it conflicted with the testimony of Owner and Secretary.[4] Therefore, based upon the credited testimony, the facts are as follows. Claimant had no guarantee of work and was free to refuse work or even work for another company. He was paid by the job regardless of how long it took him to complete it and no deductions were made; instead, Claimant received a Form 1099 and was responsible for paying his own taxes. As to the element of control, Defendant provided Claimant with a pick-up and drop-off location and a timeframe to complete each load, but did not give him any direction as to how to complete the job, which routes to travel, what times to drive each day or for how long. In addition, he was not trained by Defendant and signed an independent contractor agreement. While alone, none of these factual findings are dispositive, taken as a whole, we cannot conclude the WCJ erred in finding Claimant was an independent contractor instead of an employee.

We have recognized that "the trucking industry presents unique challenges in determining employment status." *Am. Road Lines*, 39 A.3d at 611. "Truck drivers who direct their own routes, come and go as they see fit, and control their transport as owner-operators are often deemed independent contractors." *Id.* For instance, in *Universal Am-Can*, the Supreme Court reversed this Court's decision that affirmed a WCJ's and Board's decision finding the claimant was an employee. The Supreme Court held the claimant was an independent contractor instead. The Supreme Court agreed with the defendant that the record evidence did not establish the defendant had the right to exercise the requisite degree of control over claimant's work or the

_____

[4] We are bound by the WCJ's credibility determinations. *Edwards*, 134 A.3d at 1161.

10

manner of performance. *Universal Am-Can*, 762 A.2d at 333. In that case, the claimant owned the tractor-trailer unit and contracted with defendant to haul cargo. He was required to contact the dispatcher every 12 to 24 hours, depending on the load. He was free to choose his own travel routes. He could haul cargo for other companies, but only if the defendant did not have any cargo to haul and consented to the claimant doing so. The defendant also required regular inspections, all loads be covered with tarps, and claimant to obey the speed limit. In addition, the defendant's driving manual required a one-hour stop for meals. The defendant also reserved the right to approve drivers of the claimant's truck. The WCJ found these factors were sufficient to establish that the defendant controlled the claimant's work. The Supreme Court disagreed, concluding many of the factors relied upon by the WCJ were dictated by federal regulation, which was not indicative of the defendant's control, but the government's control. *Id.* at 334-36.

In contrast, in *Sarver Towing v. Workers' Compensation Appeal Board (Bowser)*, 736 A.2d 61 (Pa. Cmwlth. 1999), this Court affirmed an award of benefits to a tow truck driver on the ground he was an employee not an independent contractor. There, the defendant hired the claimant as a trainee and paid him an hourly wage. A few months later, the claimant signed a contract agreeing to be paid a commission and be responsible for paying his own taxes. The defendant provided the claimant with a truck bearing its name, as well as all tools and equipment needed. Claimant kept the truck at his home and was contacted by either telephone or pager when he had an assignment. He was on call 24 hours a day, 7 days per week. He was not permitted to use the truck to perform work for another company and did not work for anyone else. The defendant did not advise the claimant as to what routes to take or directly supervise the claimant as he was towing vehicles.

11

Several months later, the claimant injured his back while lifting a computer at the defendant's premises at the direction of the defendant's owner. The WCJ concluded the claimant was an independent contractor and denied benefits. The Board reversed, and we affirmed the Board's order. In applying the *Hammermill* factors, we found it was "particularly important" that the defendant provided the tow truck and equipment. *Sarver Towing*, 736 A.2d at 63. We also noted that the routes chosen by the claimant were not important in determining whether the defendant exercised control over the claimant. *Id.* Rather, we said the fact that the claimant could not use the defendant's truck to perform work for other companies and was on call 24 hours a day, 7 days per week evidenced substantial control over the claimant. *Id.* Finally, we agreed with the Board that the claimant was injured while moving a computer for the defendant pursuant to the owner's directions. *Id.* As the Board concluded:

> [m]oving a computer is not a duty which one would normally associate with operation of a tow truck. The fact that [the defendant] believed it had **the ability to order [c]laimant** to move a computer, which had **nothing to do with** [c]laimant's performance as an operator of a tow truck, is clearly indicative of the fact that [the defendant] **had the control over [c]laimant** to tell him **what to do** and the manner of **how he was to do it**.

*Id.* (quoting Board opinion) (emphasis added). Accordingly, we affirmed the Board's conclusion that the claimant was an employee.

Here, Defendant provided Claimant with the car carrier and left which routes he traveled to Claimant, similar to *Sarver Towing*. However, in *Sarver Towing*, these acts really had no relation to the claimant's injury because he was not injured driving the tow truck. Rather, he was injured lifting a computer at the owner's direction, something we noted was outside his normal responsibilities as a tow truck

12

driver. This distinction is important because here, Claimant was injured doing what he contracted to do. *Sarver Towing* is also distinguishable because there, the claimant was on call for owner around the clock. To the contrary, here, the credited evidence shows Claimant was free to refuse assignments and controlled when and for how long he worked.

It bears emphasis that "[t]he existence of an employer-employee relationship is a question of law **based on the facts presented in each case**." *Edwards*, 134 A.3d at 1162 (emphasis added). Furthermore, no single *Hammermill* factor is dispositive. *Id.* Based upon the findings of the WCJ, we cannot find the WCJ or Board erred in concluding that the factors weigh in favor of finding that Claimant was an independent contractor, not an employee of Defendant.

Finally, we address Claimant's second argument that because this is a "close case" in the WCJ's eyes, given the remedial nature of the WC Act, he should be awarded benefits. While true that the WC Act has a humanitarian purpose and intends to benefit injured workers, this does not mean claimants are excused from meeting their burden of proof, including establishing an employment relationship. The principle that the WC Act is to be liberally construed is only when there are ambiguities in the WC Act. Here, while it is a close case, there is no such ambiguity.

## III. Conclusion

Based upon the WCJ's findings of fact, which are supported by substantial evidence, we discern no error in the WCJ's or Board's determination that Claimant was an independent contractor not an employee of Defendant. Accordingly, we affirm the Board's Order.

13

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Fakhriddin Baykhanov, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 245 C.D. 2018 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Onixe Express), | : | |
| Respondent | : | |

# **O R D E R**

**NOW**, October 12, 2018, the Order of the Workers' Compensation Appeal Board, in the above-captioned matter, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fakhriddin Baykhanov,             :
             Petitioner     :
                       :
          v.            :
                       :
Workers' Compensation Appeal  :
Board (Onixe Express),      :   No. 245 C.D. 2018
             Respondent  :   Submitted: June 29, 2018


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION BY
JUDGE COVEY                        FILED: October 12, 2018


       I respectfully dissent from the Majority's conclusion that "[b]ased upon the [Workers' Compensation Judge's (WCJ)] findings of fact, which are supported by substantial evidence, we discern no error in the WCJ or [the Workers' Compensation (WC) Appeal Board's (Board)] determination that [Fakhriddin Baykhanov (]Claimant[)] was an independent contractor not an employee of [Onixe Express, Inc. (OEI)]." Majority Op. at 14. Because the factors established in *Hammermill Paper Co. v. Rust Engineering Co.,* 243 A.2d 389 (Pa. 1968), are not to be considered in a vacuum, but rather in the context of the business to which they are being applied, and in the context of OEI's trucking/transportation business, the "inferences favoring [Claimant as an employee] [] make [a] stronger appeal to reason than those opposed[,]" *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.),* 134 A.3d 1156, 1162 (Pa. Cmwlth. 2016), the WCJ's conclusion that Claimant was not an employee was not supported by the facts, was not reasonable and was error as a matter of law. Thus, I would reverse the Board's order.

Initially, "[t]o be eligible for [WC] benefits, Claimant must first prove that he was injured while in an employee-employer relationship." *Haines v. Workmen's Comp. Appeal Bd. (Clearfield Cty.)*, 606 A.2d 571, 572 (Pa. Cmwlth. 1992). "Whether an employer-employee relationship exists is **a question of law** based upon findings of fact." *B & T Trucking v. Workers' Comp. Appeal Bd. (Paull)*, 815 A.2d 1167, 1171 (Pa. Cmwlth. 2003) (emphasis added). "In determining employee or independent contractor status, certain criteria have come to serve as guideposts for the reviewing tribunal." *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 332 (Pa. 2000). The Pennsylvania Supreme Court in *Hammermill*, "set[] forth the relevant factors in undertaking this analysis." *Universal Am-Can, Ltd.*, 762 A.2d at 333.

> [N]o hard and fast rule exists to determine whether a particular relationship is that of employer-employee or owner-independent contractor, [but] certain guidelines have been established and certain factors are required to be taken into consideration:
>
> > Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; **the nature of the work or occupation**; **skill required for performance**; **whether one is engaged in a distinct occupation or business**; **which party supplied the tools**; whether payment is by the time or by the job; **whether work is part of the regular business of the employer**, and also the right to terminate the employment at any time.

*Hammermill*, 243 A.2d at 392 (emphasis added) (quoting *Stepp v. Renn*, 135 A.2d 794, 796 (Pa. Super. 1957)). "Whether some or all of these factors exist in any given situation is not controlling." *Universal Am-Can, Ltd.*, 762 A.2d at 333.

"Moreover, payment of wages and payroll deductions are significant factors, as is provision of [WC] coverage. However, **payment is not determinative**." *Edwards*, 134 A.3d at 1163 (emphasis added; citations omitted).

"In addition, **a tax filing denoting self-employment**, while a relevant factor, **is not dispositive** on the issue. Similarly, the existence of **an** employment or **independent contractor agreement** is another factor to consider, but it **is not**, by itself, dispositive." *Id.* (emphasis added; citation omitted). Finally,

> '[a]lthough it is a claimant's burden to demonstrate an employer/employee relationship, our [Supreme] [C]ourt has decided that 'neither the [WC] authorities nor the courts should be solicitous to find contractorship rather than employment, and that **inferences favoring the claim need make only slightly stronger appeal to reason than those opposed**.'' *Universal Am-Can,* [*Ltd.*,] 762 A.2d at 330 (quoting *Diehl v. Keystone Alloys Co.,* . . . 156 A.2d 818, 820 ([Pa.] 1959)).

*Edwards*, 134 A.3d at 1162 (emphasis added).

> Here, the WCJ expressly found:

> Finally, and perhaps **most notably, Claimant signed an independent contractor agreement with [OEI] for services provided**. **Claimant acknowledged he received a[n Internal Revenue Service Form] '1099' and filed taxes**. Claimant never presented his tax returns to show that he reported the income as anything other than 1099 contractor income. Also, it was clear to [the WCJ] that Claimant was not an inexperienced truck driver who had no idea what he was signing. Claimant and the owner of [OEI] communicated in Russian with each other. Claimant has had a [commercial driver's license (CDL)] since 2003. He worked for other trucking companies, including Roadtex from about 2002 to 2007. He then had his own truck, and he was an 'owner/operator' from 2009 to 2013.[FN]1 Claimant's trucking company was called UZ Trucking. It appears to [the WCJ] that Claimant did understand he was working as an independent contractor. **Claimant possessed a skill of being able to drive a commercial truck and knew how to load and unload cars to transport them with a specialized two-layer car carrier truck**.

> > [FN]1 [**The WCJ**] **found this to be an important factor**. This is a close case, as there are legitimate arguments that [OEI] supplied the tools (i.e., the

truck and [global positioning system (]GPS[)] and Claimant's work is clearly part of the regular business of [OEI's] transportation business. However, the most important element in Pennsylvania is the right to control, and the [WCJ] does not believe that element weighs in favor of Claimant in this case. **If Claimant was someone who had just received his CDL license and had received training from [OEI] on how to perform the job, [the WCJ] may well have found an employment relationship**.

WCJ Dec. at 8 (emphasis added). The Board affirmed the WCJ's determination that Claimant failed to meet his burden of proving an employment relationship between him and OEI. "Because the determination as to the existence of an employer[-]employee relationship is a question of law, on this issue, our scope of review is plenary and our standard of review is *de novo*." *Dep't of Labor & Indus. v. Workers' Comp. Appeal Bd. (Lin & E. Taste)*, 155 A.3d 103, 109 (Pa. Cmwlth. 2017), *aff'd*, 187 A.3d 914 (Pa. 2018). "Importantly, although the question of whether one is an employee is a question of law, it must be answered based on the unique *facts* of each case." *Id*. Thus, while this Court is bound by the WCJ's findings of facts, "it is [this C]ourt's duty to determine if the [WCJ] correctly applied the law to the facts." *McShea v. City of Phila.*, 995 A.2d 334, 339 (Pa. 2010) (quoting *Triffin v. Dillabough*, 716 A.2d 605, 607 (Pa. 1998)).

The Dissent acknowledges that "[t]ruck drivers who direct their own routes, come and go as they see fit, and control their transport **as owner-operators** are often deemed independent contractors." *Am. Rd. Lines v. Workers' Comp. Appeal Bd. (Royal)*, 39 A.3d 603, 611 (Pa. Cmwlth. 2012) (emphasis added). However, the *American Road Lines* Court held:

Unlike claimants in many truck driver cases, [the d]ecedent was not an owner-operator of the tractor involved. . . . [The d]ecedent only operated the tractor through [the

defendant's] authority . . . . He had no control over his assignments.

> Though [the d]ecedent signed an agreement stating he was an independent contractor to obtain occupational insurance, that is but one factor, and not determinative. . . . The facts reflect that [the d]ecedent did not engage in an independent trade or profession and could not control his time or manner of work. The record thus supports the Board's conclusion that [the d]ecedent was not an independent contractor as he had no right to control the work to be done or manner of performance.

*Id.* at 612 (citation omitted). Accordingly, here,

> [u]nlike claimants in many truck driver cases, [Claimant] was not an owner-operator of the [truck] involved. In contrast, he drove a [specialized two-layer car carrier truck owned and insured] by [OEI]. [Claimant] only operated the [truck] through [OEI's] authority as directed by [OEI]. He had no control over his assignments.

> Though [Claimant] signed an agreement stating he was an independent contractor . . . , that is but one factor, and not determinative. . . . The facts reflect that [Claimant] did not engage in an independent trade or profession[1] and could not control his time or manner of work. The record thus supports the [] conclusion that [Claimant] was not an independent contractor as he had no right to control the work to be done. . . .

*Id.* at 612. OEI is a trucking/transportation business which paid Claimant directly. Further, OEI told Claimant where to travel, how many days he had to travel to his destination, and provided the GPS, gas and tolls to accomplish the required task. The fact that "Claimant was [not] someone who had just received his CDL license [nor] had received training from [OEI] on how to perform the job," does not preclude the

---

[1] The Majority states: "After signing the independent contractor agreement, [Claimant] worked briefly for another trucking company while he waited for [OEI] to have a truck available for him." Majority Op. at 3. However, although Claimant was technically working for another company, it was OEI's truck he was driving. OEI sold the truck to the other company and had not yet replaced it when Claimant signed the agreement. *See* Notes of Testimony, October 28, 2015 at 33-34.

existence of an employment relationship.  WCJ Dec. at 8 n.1.  Similarly, the fact that Claimant had a trucking company **in the past**, at which time he was an owner-operator of a truck, is not relevant to whether he **is currently** an independent contractor or an employee of OEI.

In *Sarver Towing v. Workers' Compensation Appeal Board (Bowser),* 736 A.2d 61 (Pa. Cmwlth. 1999), this Court affirmed the Board's reversal of the WCJ's conclusion that the claimant was an independent contractor based on the towing company's lack of control over the claimant.  This Court held:

> [I]t is the existence of the *right* to control the manner of [the c]laimant's work which is critical, even when that right is not exercised.  Although [the employer] exerted little direct supervision over [the c]laimant, this was due to lack of need rather than lack of capacity, as [the employer] itself trained [the c]laimant to operate the tow truck and supplied [the c]laimant with all equipment necessary to do the job.

*Id.* at 63 (citation omitted).  In addition, the *Sarver Towing* Court opined: "In this case, **we find it particularly important** that [the employer] owned the tow truck and equipment - obviously, very substantial assets - which [the c]laimant used."[2]  *Id.* (emphasis added).  Here, although OEI did not train Claimant, OEI owned and provided the truck, and OEI "certainly could have taken back the [] truck and equipment at any time if it was not satisfied with Claimant's work." *Id.*

---

[2] Notwithstanding the importance placed on these factors by the *Sarver Towing* Court, the Majority tries to distinguish *Sarver Towing* by stating: "[T]hese acts really had no relation to the claimant's injury because he was not injured driving the tow truck.  Rather, he was injured lifting a computer at the owner's direction, something we noted was outside his normal responsibilities as a tow truck driver."  Majority Op. at 13.  By making this distinction, the Majority appears to be stating that an individual may be an employee for part of the time and an independent contractor for the other part of the time.  That is not the state of the law and such would be unmanageable and lead to absurd results.

Moreover, the Board did not consider *Sarver Towing*, as it is not cited in its decision, notwithstanding that it is binding precedent which is squarely on point and dispositive.

While the WCJ states: "[OEI's] **only role** was in providing the truck, and in informing Claimant of the locations for pick-up and drop-off[,]" those facts in relation to OEI's trucking/transportation business cannot be easily dismissed. WCJ Dec. at 9 (emphasis added). The *Hammermill* factors are not to be considered in a vacuum, but rather in the context of the business to which they are being applied. In the context of OEI's trucking/transportation business, these factors clearly "favor[] the claim [and] make . . . stronger appeal to reason than those opposed." *Edwards*, 134 A.3d at 1162.

Finally, the Majority rejects Claimant's second argument that given the remedial nature of the WC Act,[3] he should be awarded benefits, by stating: "The principle that the WC Act is to be liberally construed **is only when there are ambiguities in the WC Act**. Here, while it is a close case, there is no such ambiguity." Majority Op. at 13-14 (emphasis added). However, the Pennsylvania Supreme Court held:

> '[O]ur basic premise in work[ers'] compensation matters is that the [WC] Act is remedial in nature and intended to benefit the worker, and, therefore, **the [WC] Act must be liberally construed to effectuate its humanitarian objectives**.' *Hannaberry HVAC v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Snyder, Jr.),* . . . 834 A.2d 524, 528 ([Pa.] 2003) (quoting *Peterson v. Workmen's Comp. Appeal* [*Bd.*] *(PRN Nursing Agency),* . . . 597 A.2d 1116, 1120 ([Pa.] 1991)).

*Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Givner)*, 39 A.3d 287, 290-91 (Pa. 2012) (emphasis added); *see also Schriver v. Workers' Comp. Appeal Bd. (Dep't of Transp.)*, 173 A.3d 459 (Pa. Cmwlth. 2017). This requirement is not limited to circumstances involving ambiguities in the WC Act.

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

Because the WCJ's conclusion that Claimant was not an employee was not supported by the facts, was not reasonable and was error as a matter of law, I would reverse the Board's order.

_____
ANNE E. COVEY, Judge